UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMILY LITMAN,<br><br>                              *Plaintiff*,<br><br>             v.<br><br> PACE UNIVERSITY,<br><br>                              *Defendant*. | Case No.<br><br>**<u>VERIFIED COMPLAINT</u>**<br><br>JURY TRIAL DEMANDED |

Plaintiff Emily Litman ("Ms. Litman" or "Plaintiff"), together with her attorneys, New York Lawyers for the Public Interest and Mayer Brown LLP, alleges for her Complaint against Defendant Pace University ("Pace" or "Defendant") as follows:

### *PRELIMINARY STATEMENT*

1.      In 2013, Ms. Litman, a young woman with multiple severe disabilities, achieved her dream of attending college to pursue a career in psychology. As a high-achieving high school student, Ms. Litman was offered $118,000 in institutional merit scholarships from Pace. Relying on this scholarship offer to fund a significant portion of her undergraduate education, Ms. Litman chose to attend Pace. Unfortunately, shortly before classes began in the fall of 2013, it became apparent that Ms. Litman would need to attend Pace part-time due to her disabilities. Pace responded to Ms. Litman's adversities by refusing to provide her with the merit scholarships and continuing to refuse her the scholarships every year thereafter. When it became clear that Ms. Litman would be permanently part-time, Pace rescinded all her institutional merit scholarships in 2021, maintaining that only students who attend school full-time are entitled to them.

1

2.     Ms. Litman immediately requested a "reasonable accommodation," pursuant to federal, state, and city disability non-discrimination laws, to have her scholarships prorated to correspond with her part-time status. Even though her part-time status is the direct result of her disabilities, Pace repeatedly refused to provide Ms. Litman with an accommodation.

3.     Pace compounded its illegal treatment of Ms. Litman by failing to properly certify her for a disability-based waiver of the full-time status requirement of New York State's Tuition Assistance Program ("TAP"), thereby depriving her of another source of education funding.

4.     By repeatedly excluding Ms. Litman from the institutional merit scholarships she was awarded, and from TAP, Pace discriminated against Ms. Litman on the basis of her disability, in violation of federal, state, and city law.

## *JURISDICTION AND VENUE*

5.     This is a civil action based upon Defendant's violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*; the New York State Human Rights Law, Executive Law § 290 *et seq.*; and the New York City Administrative Code § 8-101 *et seq.*, for which this Court has jurisdiction under 28 U.S.C. §§ 1331, 1343. The pendent jurisdiction of the Court is invoked over state law causes of action pursuant to 28 U.S.C. §1367.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Ms. Litman has suffered, and continues to suffer, consequences of Defendant's discriminatory actions in this District.

## *PARTIES*

7.     Plaintiff EMILY LITMAN is a resident of New York.

8.     Defendant Pace University is, and has been, at all relevant times, a not-for-profit education corporation chartered by the Regents of the State University of New York, with campuses in New York and Westchester counties, which grants undergraduate, graduate, and postgraduate degrees.

### STATEMENT OF FACTS

**<u>Ms. Litman's Disabilities</u>**

9.     Ms. Litman is a student living with numerous disabilities, which significantly impact various aspects of her life, including her ability to function as a full-time university student.

10.     Among other medical conditions, Ms. Litman has been diagnosed with Postural Orthostatic Tachycardia Syndrome ("POTS"), Fibromyalgia, Ehlers-Danlos Syndrome, multiple immune deficiencies, Chronic Fatigue Syndrome/Myalgic Encephalomyelitis, Autism, and Sjögren's Syndrome.

11.     Ms. Litman's diagnosed disabilities, including the following, directly impact her ability to perform the tasks and duties typically associated with a university student:

(a)     POTS is a disorder of the autonomic nervous system characterized by an abnormal increase in heart rate and an inability of the body to regulate blood pressure. Due to POTS, Ms. Litman frequently experiences temperature dysregulation, dizziness, headaches, and palpitations which require her to remain prone for periods of time or even to be homebound during periods when her illness intensifies.

(b)     Fibromyalgia is a long-term condition involving widespread body pain along with generalized fatigue. Due to Fibromyalgia, Ms. Litman experiences issues with sleep, memory, mood, and chronic pain.

(c)     Ehlers-Danlos Syndrome is a group of inherited disorders affecting the connective tissues of the body, primarily the skin, joints, and blood vessel walls. Due to Ehlers-Danlos Syndrome, Ms. Litman experiences chronic pain and autonomic dysregulation.

(d)     Immune deficiencies are a collection of disorders which weaken the immune system and allow infections and other health problems to occur more easily. Due to these disorders, Ms. Litman experiences more frequent, longer-lasting, and more severe infections that are harder to treat than those of someone with a typical immune system.

(e)     Chronic Fatigue Syndrome, also known as Myalgic Encephalomyelitis, is a disease which causes extreme fatigue lasting for six months or more. Due to Chronic Fatigue Syndrome, Ms. Litman experiences extreme fatigue that worsens with physical or mental activity and does not fully improve with rest, as well as problems with her memory, dizziness, and chronic pain.

As a result of her disabilities, Ms. Litman cannot attend university full-time.

**Pace's Scholarship Offer and the Full-time Enrollment Requirement**

12.     In or about February 2013, Ms. Litman was offered admission to Pace's Pforzheimer Honors College.

13.     Pace receives federal financial assistance through student financial aid and research grants.

14.     In connection with her admission, Pace offered Ms. Litman the "Honors Scholarship" in the yearly amount of $15,000, the "Pace Opportunity Scholarship" in the yearly amount of $6,500, and the "Pace Grant" in the yearly amount of $8,000.

15.     Pace never specifically informed Ms. Litman that these scholarships required full-time enrollment.

16.     On May 1, 2013, Ms. Litman submitted a non-refundable deposit indicating that she would attend Pace for her undergraduate education. She did so in large part because of the scholarships Pace offered.

17.     It was not until a full month after Ms. Litman submitted her tuition deposit that Ms. Litman learned of the full-time enrollment requirement, and she only learned about it from a thorough reading of the scholarship agreements for two of her three scholarships, which Pace provided her. Notably, Ms. Litman never received an agreement for her third scholarship. And more notably, Pace never specifically advised Ms. Litman of the full-time enrollment requirement before submitting her deposit.

18.     On June 26, 2013, Ms. Litman accepted the academic admission and scholarship offer from Pace.

### Pace's Provision of Reasonable Accommodations

19.     On July 31, 2013, Ms. Litman submitted documentation to Pace's Office of Disability Services ("ODS") to become registered as a "student with a disability." As part of this submission, Ms. Litman provided extensive medical documentation to Pace from multiple treating physicians, all of whom recommended that Ms. Litman attend part-time (rather than full-time) and receive appropriate "reasonable accommodations" for her disabilities.

20.     On August 5, 2013, Ms. Litman received an email from Jenna Cler, Assistant Director of ODS, informing Ms. Litman that she would be approved for dormitory placement on the lowest available floor, and stating that Ms. Cler would write a letter to the housing office indicating this accommodation.

21.     On August 9, 2013, Ms. Cler further informed Ms. Litman that she would be permitted to live on campus as a part-time student as part of an approved accommodation for her

disability, as only full-time students were eligible for housing. Ms. Cler informed Ms. Litman that she would amend Ms. Litman's housing assignment to reflect this accommodation, permitting Ms. Litman to live on campus as a part-time student.

22.     Throughout Ms. Litman's studies, Pace provided numerous other accommodations to Ms. Litman in light of her disabilities, including extended time and a reduced-distraction environment for exams, the use of a calculator on exams, notetaking services, breaks during classes, closed captioning, permission to have her camera off during online classes, extensions on assignments, and leniency for absences.

**<u>Pace's Refusal to Provide Ms. Litman with the Promised Scholarships</u>**

23.     When it became apparent that Ms. Litman would need to attend Pace part-time because of her disabilities, on August 15, 2013, Ms. Litman contacted her academic advisor, William Offutt, by email, asking about the implications of her necessary part-time status.

24.      Mr. Offutt reassuringly replied via email that she would simply need to pursue a waiver to prorate the scholarships according to her part-time status. Given this simple solution, Ms. Litman anticipated no problems accessing her scholarships.

25.     Later that month, Ms. Litman's mother, Helen Badoyannis, spoke with Mark Stephens, Director of Financial Aid at Pace, and Mr. Stephens stated that none of Ms. Litman's institutional merit scholarships could be prorated.

26.     Pace forced Ms. Litman to defer her institutional merit scholarships until she could attend full-time, despite having multiple records from Ms. Litman's physicians stating that Ms. Litman needed to attend school part-time because of her disabilities.

27.     Subsequently, Ms. Litman repeatedly requested that Pace provide her with the promised scholarships even though she was a part-time student, and each time Pace refused to do so.

28.     On June 24, 2015, Ms. Litman's mother again contacted Mr. Stephens, requesting that Ms. Litman's institutional merit scholarships be prorated according to her part-time status. During a phone conversation the following day, Mr. Stephens stated that Pace would not provide this accommodation.

29.     On July 6, 2016, Ms. Litman's mother once again contacted Mr. Stephens concerning options for prorating Ms. Litman's scholarships, given Ms. Litman's ongoing inability to attend Pace as a full-time student.

30.     On July 19, 2016, Mr. Stephens responded that Pace did not offer any undergraduate part-time enrollment scholarships. Instead, despite being well-aware of the opinions of Ms. Litman's treating physicians that Ms. Litman needed to attend school part-time, Mr. Stephens suggested that Ms. Litman slowly increase her enrollment to full-time. He stated that Ms. Litman's scholarships would have to remain deferred until she could attend full-time.

31.     Ms. Litman was forced to take a medical leave of absence from Pace due to her disabilities beginning in the fall of 2017 and was only able to resume study at Pace during the Fall 2019 semester.

32.     On June 30, 2021, after two additional academic years of part-time attendance due to her disability, Ms. Litman made another request to Pace that her scholarships be prorated, explaining that she met all other necessary requirements besides full-time enrollment.

33.     On July 1, 2021, Mr. Stephens replied again that Pace would not waive the full-time requirement, and rescinded Ms. Litman's three institutional merit scholarships.

34.     Following numerous failed attempts to work with Pace to receive an accommodation to access her scholarships, on July 28, 2021, Ms. Litman emailed a letter to Bernard Dufresne, Executive Director of the Office of Institutional Equity/Title IX Compliance at Pace.

35.     In that letter, Ms. Litman again explained that she had met all the qualifications for her institutional merit scholarships but was unable to attend as a full-time student due to her debilitating disabilities. Ms. Litman once again requested that her scholarships be prorated as a reasonable accommodation for her disability.

36.     On September 17, 2021, Mr. Dufresne replied to Ms. Litman that Pace was not required to extend a financial aid accommodation to a student with a disability because the requirement for full-time enrollment was purportedly a facially neutral provision.

37.     On September 20, 2021, Ms. Litman's mother also wrote to Mr. Dufresne, explaining that Ms. Litman was seeking an accommodation because her disability prevented her from attending Pace full-time, specifically noting that Pace's failure to make a reasonable accommodation for her daughter's disability was discriminatory.

38.     Mr. Dufresne replied to the September 20, 2021 email on November 10, 2021, again denying the request for an accommodation.

39.     On or about December 10, 2021, Ms. Litman filed an appeal with Pace's Office of the Provost regarding the denial of her scholarship.

**Ms. Litman's OCR Complaint**

40.     After the Office of the Provost failed to timely respond, Ms. Litman submitted a complaint to the United States Department of Education's Office for Civil Rights ("OCR") on January 7, 2022.

41.     On February 15, 2022, Ms. Litman received an email from Pace's Provost, Vanya Quiñones, denying Ms. Litman a prorated scholarship accommodation and restating that Pace's policy was purportedly facially neutral.

42.     On February 28, 2022, Ms. Litman began communicating with her OCR case manager, Timothy Cochrane, regarding Pace's failure to accommodate her disability.

43.     Over the course of two years, Ms. Litman diligently followed up and assisted in moving her OCR case investigation along through email and phone conversations with Mr. Cochrane.

44.     During this time, Ms. Litman and her mother also continued to seek an internal resolution at Pace, including by submitting a scholarship accommodation request to the Assistant Director of Student Accessibility Services ("SAS"), Sydney Tisch, on July 19, 2022.

45.     Ms. Tisch responded on July 22, 2022, stating yet again that Pace would not grant Ms. Litman's accommodation request.

46.     On April 8, 2024, OCR sent Ms. Litman a letter informing her that it had concluded that Pace had discriminated against her on the basis of disability by failing to engage in an "interactive process" and by failing to assess whether Ms. Litman's request constituted a "fundamental alteration" of Pace's scholarship program or posed an "undue burden."

47.     As a result of this finding, Pace agreed to implement a Resolution Agreement, which included action items that Pace was required to undertake to remedy its discrimination against Ms. Litman. These action items included training staff, establishing a meaningful and informed process consistent with Section 504 to determine whether to approve Ms. Litman's request for a prorated scholarship and whether to reimburse her for the scholarship monies she did

not receive, and reviewing Pace's responses to any requests for disability-based modifications to the full-time enrollment requirement since the 2020-2021 academic year.

48.    On October 18, 2024, after purportedly complying with the Resolution Agreement, Amanda Peterson, the Associate Director of Financial Aid Compliance at Pace, emailed Ms. Litman, reaffirming Pace's denial of Ms. Litman's scholarship.

49.    Pace did not provide Ms. Litman with any evidence of having undertaken any substantive, individualized review, nor did it demonstrate that Ms. Litman's requested accommodation would result in an undue burden on Pace or a fundamental alteration of the scholarship program as OCR required.

50.    Furthermore, Pace did not involve Ms. Litman in any interactive process regarding her reasonable accommodation request, or even contact her once about it, as part of its allegedly revised process.

51.    As a result of Pace's actions and omissions, Ms. Litman was denied a full and equal opportunity to enjoy the benefits of her scholarships and was excluded from participation in and denied the benefits of Pace's financial aid programs on the basis of her disabilities.

**Pace's Denial of Access to TAP for Ms. Litman**

52.    The Higher Education Services Corporation ("HESC") administers the New York State Tuition Assistance Program ("TAP"). TAP requires students to be enrolled full-time, but it offers an "ADA waiver" of this requirement or a waiver pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"). Universities must certify a student as ADA waiver-eligible in order to alert HESC to the student's need for a waiver.

53.    Pace failed to certify Ms. Litman as being ADA waiver-eligible, and instead actually "decertified" her for the 2014-2015 and 2016-2017 academic years and for the Spring

2022 semester, stating that she was not a full-time student and thereby completely ignoring its responsibility to certify her pursuant to the ADA waiver mandate.[1]

54.     For the Fall 2021 semester, shortly after Pace's Office of Institutional Equity/Title IX Compliance reaffirmed its denial of Ms. Litman's appeal, Pace decertified Ms. Litman, stating that she was not enrolled.

55.     Pace's financial aid materials did not include information about the TAP ADA waiver, nor did Pace inform Ms. Litman of the TAP ADA waiver option, despite the fact that Ms. Litman and her mother inquired about TAP from Pace on numerous occasions.

56.     Ms. Litman first learned about the TAP ADA waiver in or about July 2023 after searching HESC's website.

57.     Shortly thereafter, Ms. Litman had a conversation with HESC, which informed her that Pace was responsible for properly certifying her for the TAP ADA waiver, but that Pace had not done so.

58.     In July 2024, Ms. Litman contacted Pace, asking that she be properly certified as eligible for the TAP ADA waiver. Although Pace complied with her request, it provided no explanation as to why it had previously failed to properly certify Ms. Litman.

### FIRST CAUSE OF ACTION

### (Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*)

59.     Plaintiff repeats and realleges every allegation contained in all previous paragraphs.

60.     Title III of the ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations

---

[1] Ms. Litman did not apply for or was not financially eligible for TAP during the 2013-2014, 2015-2016, 2017-2018, 2018-2019, and 2019-2020 academic years.

of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

61.     The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities . . ." 42 U.S.C. § 12102(1)(A).

62.     Under the ADA, a postsecondary school is considered a place of public accommodation. 42 U.S.C. § 12181(7)(J).

63.     By reason of her multiple disabilities, including her Chronic Fatigue Syndrome, multiple immune deficiencies, Sjögren's Syndrome, Fibromyalgia, Ehlers-Danlos Syndrome, and POTS, Ms. Litman is an individual with a disability within the meaning of the ADA.

64.     Pace discriminated against Ms. Litman because of her disability by failing to provide her with equal access to the full and equal enjoyment of its institutional merit scholarship program.

## SECOND CAUSE OF ACTION

### (Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*)

65.     Plaintiff repeats and realleges every allegation contained in all previous paragraphs.

66.     Title III of the ADA requires places of public accommodation to provide reasonable accommodations necessary to afford an individual with a disability full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii); *see also* 28 C.F.R. § 36.302(a).

67.     The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities . . ." 42 U.S.C. § 12102(1)(A).

68.     Under the ADA, a postsecondary school is considered a place of public accommodation. 42 U.S.C. § 12181(7)(J).

69.    By reason of her multiple disabilities, including her Chronic Fatigue Syndrome, multiple immune deficiencies, Sjögren's Syndrome, Fibromyalgia, Ehlers-Danlos Syndrome, and POTS, Ms. Litman is an individual with a disability within the meaning of the ADA.

70.    Pace discriminated against Ms. Litman because of her disabilities by failing to provide Ms. Litman with a reasonable accommodation for prorated institutional merit scholarships necessary to afford Ms. Litman the full and equal enjoyment of Pace's goods, services, facilities, privileges, advantages, and accommodations.

### THIRD CAUSE OF ACTION

### (Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*)

71.    Plaintiff repeats and realleges every allegation contained in all previous paragraphs.

72.    Title III of the ADA prohibits a covered entity from discriminating against individuals with disabilities by imposing unnecessary eligibility criteria that screen out or tend to screen out individuals with disabilities from fully enjoying the entity's goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(A)(i).

73.    The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities . . ." 42 U.S.C. § 12102(1)(A).

74.    Under the ADA, a postsecondary school is considered a place of public accommodation. 42 U.S.C. § 12181(7)(J).

75.    By reason of her multiple disabilities, including her Chronic Fatigue Syndrome, multiple immune deficiencies, Sjögren's Syndrome, Fibromyalgia, Ehlers-Danlos Syndrome, and POTS, Ms. Litman is an individual with a disability within the meaning of the ADA.

76.    By imposing an unnecessary requirement that students attend full-time to be eligible for institutional merit scholarships, which screens out individuals with disabilities from

the full enjoyment of Pace's goods, services, facilities, privileges, advantages, and accommodations, Pace discriminated against Ms. Litman because of her disability.

## FOURTH CAUSE OF ACTION

### (Section 504 of the Rehabilitation Act (29 U.S.C. § 794))

77.     Plaintiff repeats and realleges every allegation contained in all previous paragraphs.

78.     Section 504 prohibits entities receiving federal financial assistance from excluding or denying the benefits of any program or activity from individuals with disabilities who are otherwise qualified. 34 C.F.R. § 104.43(a).

79.     "In providing financial assistance to qualified [disabled] persons, a recipient to which this subpart applies may not, on the basis of [disability], provide less assistance than is provided to [nondisabled] persons, limit eligibility for assistance, or otherwise discriminate . . ." 34 C.F.R. § 104.46(a)(1)(i).

80.     Section 504 defines "individual with a disability" as an "individual who has a physical or mental impairment that substantially limits one or more major life activities of such individual." 29 U.S.C. § 705(20)(B) (referencing 42 U.S.C. § 12102).

81.     By reason of her multiple disabilities, including her Chronic Fatigue Syndrome, multiple immune deficiencies, Sjögren's Syndrome, Fibromyalgia, Ehlers-Danlos Syndrome, and POTS, Ms. Litman has a disability within the meaning of Section 504.

82.     Pace receives federal financial assistance.

83.     By excluding Ms. Litman from Pace's institutional merit scholarship program because Ms. Litman's disability necessitated her part-time status, Pace discriminated against Ms. Litman because of her disability.

## FIFTH CAUSE OF ACTION

### (Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794))

84.     Plaintiff repeats and realleges every allegation contained in all previous paragraphs.

85.     Section 504 requires covered entities to provide reasonable accommodations to ensure qualified individuals with disabilities have meaningful access to their services. *Brief v. Albert Einstein Coll. of Med.*, 423 Fed. Appx. 88, 91 (2d Cir. 2011) (citing *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004)).

86.     Section 504 defines "individual with a disability" as an "individual who has a physical or mental impairment that substantially limits one or more major life activities of such individual." 29 U.S.C. § 705(20)(B) (referencing 42 U.S.C. § 12102).

87.     By reason of her multiple disabilities, including her Chronic Fatigue Syndrome, multiple immune deficiencies, Sjögren's Syndrome, Fibromyalgia, Ehlers-Danlos Syndrome, and POTS, Ms. Litman has a disability within the meaning of Section 504.

88.     Pace receives federal financial assistance.

89.     By failing to prorate Ms. Litman's institutional merit scholarships as a reasonable accommodation, Pace discriminated against Ms. Litman because of her disability.

## SIXTH CAUSE OF ACTION

### (New York State Human Rights Law (Executive Law § 296(4)))

90.     Plaintiff repeats and realleges every allegation contained in all previous paragraphs.

91.     The New York State Human Rights Law prohibits discrimination based on disability in the use of the facilities of an "education corporation" to any person otherwise qualified.

92.    The New York State Human Rights Law defines disability as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques . . ." Executive Law § 292(21).

93.    By reason of her multiple disabilities, including her Chronic Fatigue Syndrome, multiple immune deficiencies, Sjögren's Syndrome, Fibromyalgia, Ehlers-Danlos Syndrome, and POTS, Ms. Litman has a disability within the meaning of the New York State Human Rights Law. *Id.*

94.    Pace is an education corporation within the meaning of the New York State Human Rights Law.

95.    By excluding Ms. Litman from Pace's institutional merit scholarship program because her disability necessitated part-time status, Pace discriminated against Ms. Litman on the basis of her disability in the use of Pace's facilities.

### SEVENTH CAUSE OF ACTION

### (New York State Human Rights Law (Executive Law § 296(4)))

96.    Plaintiff repeats and realleges every allegation contained in all previous paragraphs.

97.    The New York State Human Rights Law prohibits discrimination based on disability in the use of the facilities of an "education corporation" to any person otherwise qualified.

98.    The New York State Human Rights Law defines disability as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques . . ." Executive Law § 292(21).

99.     By reason of her multiple disabilities, including her Chronic Fatigue Syndrome, multiple immune deficiencies, Sjögren's Syndrome, Fibromyalgia, Ehlers-Danlos Syndrome, and POTS, Ms. Litman has a disability within the meaning of the New York State Human Rights Law.

100.     Pace is an education corporation within the meaning of the New York State Human Rights Law.

101.     By failing to provide Ms. Litman with her prorated institutional merit scholarships as a reasonable accommodation, Pace discriminated against Ms. Litman on the basis of her disability in the use of Pace's facilities.

**EIGHTH CAUSE OF ACTION**

**(New York City Human Rights Law (New York City Administrative Code § 8-107(4)))**

102.     Plaintiff repeats and realleges every allegation contained in all previous paragraphs.

103.     The New York City Human Rights Law, New York City Administrative Code § 8-107(4), prohibits discrimination on the basis of disability in the refusal, withholding from or denial of the accommodations, advantages, facilities, or privileges by any place or provider of public accommodation.

104.     The New York City Human Rights Law defines disability as "any physical, medical, mental or psychological impairment, or a history or record of such impairment . . ." New York City Administrative Code § 8-102.

105.     By reason of her multiple disabilities, including her Chronic Fatigue Syndrome, multiple immune deficiencies, Sjögren's Syndrome, Fibromyalgia, Ehlers-Danlos Syndrome, and POTS, Ms. Litman has a disability within the meaning of the New York City Human Rights Law.

106.     Pace is a covered entity within the meaning of the New York City Administrative Code § 8-107(4).

107.    By excluding Ms. Litman from Pace's institutional merit scholarship program because Ms. Litman's disability necessitated part-time status, Pace refused, withheld and denied its accommodations, advantages, facilities, and privileges, and thereby discriminated against Ms. Litman on the basis of her disability.

## NINTH CAUSE OF ACTION

### (New York City Human Rights Law (New York City Administrative Code § 8-107(4)))

108.    Plaintiff repeats and realleges every allegation contained in all previous paragraphs.

109.    The New York City Human Rights Law, New York City Administrative Code § 8-107(4) makes it unlawful for a covered entity to fail to provide a reasonable accommodation "to enable a person with a disability to … enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."

110.    The New York City Human Rights Law defines disability as "any physical, medical, mental or psychological impairment, or a history or record of such impairment . . ." New York City Administrative Code § 8-102.

111.    By reason of her multiple disabilities, including her Chronic Fatigue Syndrome, multiple immune deficiencies, Sjögren's Syndrome, Fibromyalgia, Ehlers-Danlos Syndrome, and POTS, Ms. Litman has a disability within the meaning of the New York City Human Rights Law.

112.    Pace is a covered entity within the meaning of the New York City Administrative Code § 8-107(4).

113.    By failing to provide Ms. Litman prorated institutional merit scholarships as a reasonable accommodation, Pace failed to permit Ms. Litman to enjoy the right to access Pace's services, and thereby discriminated against Ms. Litman on the basis of her disability.

## TENTH CAUSE OF ACTION

### (Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182)

114.    Plaintiff repeats and realleges every allegation contained in all previous paragraphs.

115.    Title III of the ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

116.    The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities . . ." 42 U.S.C. § 12102(1)(A).

117.    Under the ADA, a postsecondary school is considered a place of public accommodation. 42 U.S.C. § 12181(7)(J).

118.    By reason of her multiple disabilities, including her Chronic Fatigue Syndrome, multiple immune deficiencies, Sjögren's Syndrome, Fibromyalgia, Ehlers-Danlos Syndrome, and POTS, Ms. Litman is an individual with a disability within the meaning of the ADA.

119.    Pace discriminated against Ms. Litman by failing to provide Ms. Litman with equal access to the services of Pace's financial aid office because of her disability. While Pace provided other students with appropriate access to TAP, it denied Ms. Litman access to TAP by failing to properly certify her as Pace had done for students without disabilities.

## ELEVENTH CAUSE OF ACTION

### (Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794))

120.    Plaintiff repeats and realleges every allegation contained in all previous paragraphs.

121.    Section 504 prohibits entities receiving federal financial assistance from excluding or denying the benefits of any program or activity from individuals with disabilities who are otherwise qualified. 34 C.F.R. § 104.43(a).

122.    "In providing financial assistance to qualified [disabled] persons, a recipient to which this subpart applies may not, on the basis of [disability], provide less assistance than is provided to [nondisabled] persons, limit eligibility for assistance, or otherwise discriminate . . ." 34 CFR § 104.46(a)(1)(i).

123.    Section 504 defines "individual with a disability" as an "individual who has a physical or mental impairment that substantially limits one or more major life activities of such individual." 29 U.S.C. § 705(20)(B) (referencing 42 U.S.C. § 12102).

124.    By reason of her multiple disabilities, including her Chronic Fatigue Syndrome, multiple immune deficiencies, Sjögren's Syndrome, Fibromyalgia, Ehlers-Danlos Syndrome, and POTS, Ms. Litman has a disability within the meaning of Section 504.

125.    Pace receives federal financial assistance.

126.    Pace discriminated against Ms. Litman by failing to provide Ms. Litman with equal access to the services of Pace's financial aid office because of her disability. While Pace provided other students with appropriate access to TAP, it denied Ms. Litman access by failing to properly certify her as Pace had done for students without disabilities.

## TWELFTH CAUSE OF ACTION

### (New York State Human Rights Law (Executive Law § 296(4)))

127.    Plaintiff repeats and realleges every allegation contained in all previous paragraphs.

128.    The New York State Human Rights Law prohibits discrimination based on disability in the use of the facilities of an "education corporation" to any person otherwise qualified.

129.    The New York State Human Rights Law defines disability as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques . . ." Executive Law § 292(21).

130.    By reason of her multiple disabilities, including her Chronic Fatigue Syndrome, multiple immune deficiencies, Sjögren's Syndrome, Fibromyalgia, Ehlers-Danlos Syndrome, and POTS, Ms. Litman has a disability within the meaning of the New York State Human Rights Law. *Id.*

131.    Pace is an education corporation within the meaning of the New York State Human Rights Law.

132.    Pace discriminated against Ms. Litman by failing to provide Ms. Litman with equal access to the facilities of Pace's financial aid office because of her disability. While Pace provided other students with appropriate access to TAP, it denied Ms. Litman access by failing to properly certify her as Pace had done for students without disabilities.

## THIRTEENTH CAUSE OF ACTION

### (New York City Human Rights Law (New York City Administrative Code § 8-107(4)))

133.    Plaintiff repeats and realleges every allegation contained in all previous paragraphs.

134.    The New York City Human Rights Law, New York City Administrative Code § 8-107(4), prohibits discrimination on the basis of disability in the refusal, withholding from or denial

of the accommodations, advantages, facilities, or privileges by any place or provider of public accommodation.

135.    The New York City Human Rights Law defines disability as "any physical, medical, mental or psychological impairment, or a history or record of such impairment . . ." New York City Administrative Code § 8-102.

136.    By reason of her multiple disabilities, including her Chronic Fatigue Syndrome, multiple immune deficiencies, Sjögren's Syndrome, Fibromyalgia, Ehlers-Danlos Syndrome, and POTS, Ms. Litman has a disability within the meaning of the New York City Human Rights Law.

137.    Pace is a covered entity within the meaning of the New York City Administrative Code § 8-107(4).

138.    Pace discriminated against Ms. Litman by failing to provide Ms. Litman with equal access to the services of Pace's financial aid office because of her disability. While Pace provided other students with appropriate access to TAP, it denied Ms. Litman access by failing to properly certify her as Pace had done for students without disabilities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant and for the following relief:

139.    A declaration that Defendant's acts complained of herein violate Plaintiff's rights under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the New York State Human Rights Law, and the New York City Human Rights Law;

140.    An order directing Defendant to provide Plaintiff with a reasonable accommodation of prorated institutional merit scholarships, from the beginning of her time at Pace through her graduation;

141.    An order directing Defendant to reimburse Plaintiff for the HESC TAP funds she would have received if Pace had properly certified her as an ADA student;

142.    Compensatory damages;

143.    Prevailing party attorney's fees;

144.    The costs of the suit incurred by Plaintiff in this action; and

145.    Such other and further relief as the Court deems just and proper.


Dated: New York, New York
September 23, 2025

*/s/   Ruth Lowenkron*
New York Lawyers for the Public Interest
151 W. 30th Street, 11th Floor
New York, NY 10001
Telephone: (212) 244-4664
Email: rlowenkron@nylpi.org

*/s/   Sakeena Trice*
New York Lawyers for the Public Interest
151 W. 30th Street, 11th Floor
New York, NY 10001
Telephone: (212) 244-4664
Email: strice@nylpi.org

*Attorneys for Plaintiff*

## VERIFICATION

EMILY LITMAN, affirms as follows under penalties of perjury:

I am the Plaintiff in the above-captioned action and am fully familiar with the facts and circumstances of this case.

I have read the foregoing Complaint and find its contents to be true and correct, except as to matters alleged upon information and belief, and as to those matters I believe them to be true and correct.

Dated: Setauket, New York
July 15, 2025

*Emily Litman*
EMILY LITMAN